[L. A. No. 11940. In Bank.—November 27, 1931.]

SEABOARD ACCEPTANCE CORPORATION (a Corporation), Respondent, v. W. A. SHAY, as Sheriff, etc., et al., Appellants.

Nichols, Cooper & Hickson, A. L. Hickson and Bert L. Cooper for Appellants.

Clement L. Shinn and Leland S. Davidson for Respondent.

Loyd Wright and Charles E. Millikan, *Amici Curiae.*

THE COURT.—This appeal presents to this court for the first time the question as to the validity of the provisions of section 2980 of the Civil Code as enacted in 1927. (Stats. 1927, p. 1567.) The section has since been materially amended. (Stats. 1931, p. 1607.) As first enacted the section read as follows:

"Any conditional sales contract creating or reserving any interest in or lien upon livestock or poultry not in the possession of the person having such interest or lien shall be void against all others than the parties to the agreement unless acknowledged and recorded in the same manner as mortgages on livestock are required to be acknowledged and recorded.

"Sections 2959 and 2965 of the Civil Code, and sections 408, 4130, 4140 and 4300c of the Potical Code, are hereby made applicable to conditional sales contracts involving livestock and poultry in the same manner as to mortgages on live stock."

The Civil and Political Code sections mentioned in the last paragraph of section 2980, as above quoted, provide for the place of recordation of chattel mortgages on livestock and other migratory chattels, and for the fees and duties of the various officers connected therewith.

Before discussing the question as to the validity of the above section, the facts of the present case should be briefly set forth. These facts were practically all stipulated to by the parties.

In 1927, O. D. Beard purchased from W. E. King certain dairy cattle by means of three separate conditional sales contracts, each of which reserved title in the seller until the full purchase price should be paid. These three contracts are dated November 4, 1926, February 25, 1927, and July 28, 1927, respectively. The effective date of section 2980 of the Civil Code was July 29, 1927, so that the contracts were executed before the section became operative. On the day that each contract was executed King sold and assigned his interest therein to respondent corporation. On November 15, 1927, there was still owing to respondent corporation from Beard a sum of money in excess of $3,200 upon these contracts. On that date, for reasons that do not appear, the three original contracts were canceled (being returned to Beard on November 30, 1927) and a new conditional sales contract was executed. Although King had long since sold his interest in the three original contracts to respondent, the new contract names King as seller and Beard as buyer. The new contract covers the same cattle covered by the original contracts, except for the fact that four or five of the original cows had died and, in a few instances, different cows had been substituted for those named in the original contracts. On the date that the new contract was executed, King assigned his interest therein to respondent. On November 16, 1927, Beard was notified by letter that the November 15th contract had been assigned by King to respondent. This contract was recorded by respondent December 10, 1927, twenty-five days after its execution. In the meantime

one J. P. Loubet, a creditor of Beard, on November 19, 1927, brought an action against Beard and attached the cattle in his possession. It is not clear as to when the debt forming the basis of this suit was incurred, but inferentially, at least, it appears that this indebtedness arose *before* November 15, 1927. Respondent so contends and appellants do not deny the correctness of this assertion. Loubet prosecuted his suit to judgment and then proceeded to enforce the same by execution. On December 10, 1927, respondent filed a third party claim, setting up its title under the conditional sales contract. On December 13, 1927, the sheriff caused the seized cattle to be sold to satisfy the judgment receiving therefor the sum of $3,200. Respondent thereupon commenced this action to recover the reasonable value of the cattle sold. The trial court held that the rights of respondent, as evidenced by the November 15, 1927, contract, were superior to those of Loubet, an attaching creditor of the buyer, and gave judgment in favor of respondent. From such judgment appellants prosecute this appeal, contending that, under section 2980 of the Civil Code, the conditional sales contract reserving title in the seller, was void as against a creditor of the buyer, regardless of whether such creditor extended credit to the buyer before or after the execution of the conditional sales contract. Respondent, among other things, contends that said section is unconstitutional, being in violation of article I, sections 11 and 21 of the California Constitution; that there is no reasonable basis for classifying conditional sales contracts on poultry and livestock differently from conditional sales contracts on other chattels; that such legislation is arbitrary and unreasonable. Appellants contend that such legislation was intended to protect those dealing with a buyer in possession and that, so construed, the classification is reasonable. ■

We have no doubt that there is a reasonable basis for classifying persons who deal with a buyer in possession of poultry and livestock under a conditional sales contract differently from persons dealing with a buyer in possession of other chattels. One basis for such classification is that a purchaser from a buyer in possession of poultry or livestock under a conditional sales contract must immediately expend money for their care and feed, while such expenditure is not necessary to the same degree upon a purchase from

a buyer in possession of other chattels under a conditional sales contract. This distinction alone, under well-settled principles, would seem sufficient to sustain such a statute. (See, generally, *Ex parte Sohncke*, 148 Cal. 262 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956]; *Hellman* v. *Shoulters*, 114 Cal. 136 [44 Pac. 915, 45 Pac. 1057].) ■ The difficulty with the statute now under consideration is that if the words used therein be given their usual and ordinary meaning, creditors or others dealing with the buyer are not protected at all. The statute provides that in the event a conditional sales contract on poultry or livestock be not recorded, it is *"void against all others* than the parties to the agreement. . . . "* In other words, not only is the provision reserving title in the seller void, but the entire conditional sales contract is void to the whole world, with the exception of the contracting parties. It would, therefore, follow that such a conditional sales contract is void as to the creditors of the buyer, and that as to such persons the situation is the same as if the conditional sales contract had never been entered into. In other words, as between the seller and creditors of the buyer, the seller must prevail, the buyer having no interest in the goods attachable at the instance of his creditors. Such a result is, of course, not that intended by the legislature, and such an interpretation would tend to defeat the only possible purpose such legislation could have. If this be the proper interpretation, then such section is undoubtedly unconstitutional, because no reason has been suggested, nor does any occur to us, why such contracts on poultry and livestock should be void as to the whole world, with the exception of the contracting parties, if not recorded, when conditional sales contracts on other chattels are valid as to the whole world even though not recorded. In other words, the only basis for the classification of contracts has no application. It is probably safe to assume that the legislature had in mind the protection of persons dealing with a buyer in possession, but the difficulty is that they have not expressed this intent in the language used. ■ This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used. By the express provisions of section 1858 of the Code of

Civil Procedure, "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. . . . " It is elementary that there can be no intent in a statute not expressed in its words; that the intention of the legislature must be determined from the language of the statute. (*Ex parte Goodrich,* 160 Cal. 410 [Ann. Cas. 1913A, 56, 117 Pac. 451]; *In re Application of the Monrovia Evening Post,* 199 Cal. 263 [248 Pac. 1017].) As stated in *City of Eureka* v. *Diaz,* 89 Cal. 467, at page 469 [26 Pac. 961, 962]: "It is a cardinal rule in the construction of statutes that the intent of the legislator should be followed, but this is subject to the imperative and paramount rule that the court cannot depart from the meaning of language which is free from ambiguity, although the consequence would be to defeat the object of the act." (See, also, *Hopper* v. *Keys,* 152 Cal. 488 [92 Pac. 1017]; *Smith* v. *Union Oil Co.,* 166 Cal. 217 [135 Pac. 966].) Applying these rules of construction to the statute before us, it necessarily follows that the contract is void as to appellant and that, as to him, the buyer Beard had no attachable interest.

Appellants strongly rely on the case of *Seaboard Dairy Credit Corp.* v. *Erickson,* 41 Fed. (2d) 726. This court granted a hearing in the instant case, after decision by the District Court of Appeal, largely because of the contention made by petitioner that the District Court decision was in conflict with the federal case cited, wherein the Circuit Court of Appeals, Ninth Circuit, held that the section here involved was constitutional as far as classification was concerned. Following this holding, which is made without pointing out any basis for classification, the federal court continued as follows:

"More plausible, we think, would be an argument that the section is void for uncertainty. Read literally, it will be observed the language fully supports the plaintiff's second position. If not recorded, the instrument is void; not any special condition or stipulation, but the contract as a whole. Hence, appellant claims, if the statute was operative at all, the transaction of sale was altogether void and ineffective for any purpose, and therefore, as the assignee of Lasalle [the seller] it is the sole owner of the cows with a possible

right in the trustee to recover what was paid by the bankrupt from time to time on account of the supposed purchase price. But while we do not know just what the legislature intended, it must be assumed that such a result was not contemplated. In that view the provision would be self-destructive, and what must have been a major, if not the only, purpose of the enactment would be wholly frustrated. Assuming, as we think we may, that the legislature intended to protect the public dealing with a vendee in possession, against secret titles and liens, perhaps we can, without unreasonable violence, restrict the operation of the 'voiding' clause to that portion of the contract purporting to retain title in the vendor."

Just how this result can be properly reached is not made apparent. By limiting the voiding provision of the statute to the clause in the contract reserving title in the seller, the court did not interpret the language used in the statute, but inserted a qualifying clause not found therein. We do not feel warranted in thus rewriting the statute. We are of the opinion that under the statute as written, creditors of the buyer have no rights against the seller.

However, even if it were possible to interpret the statute so as to limit the voiding provision to the clause reserving title in the seller, the statute even then would be void for uncertainty. To give any effect to such statute, it would be necessary to insert other qualifying and explanatory provisions not found therein. This is clearly illustrated in the federal case relied upon by appellants. After first holding that the voiding provision only applied to the clause reserving title in the seller, as above stated, the court went on to consider other phases of uncertainty and ambiguity found in the statute. The court pointed out that there is no provision in the statute for the time within which such conditional sales contracts must be recorded; that the protection afforded by the statute is not limited to those who deal with the buyer in good faith; that there is no mention of the rights of the parties who deal with the buyer after recordation, when such recordation has been withheld for more than a reasonable time. The court points out that, under the statute as now written, one dealing with the buyer in possession, even with notice of the seller's rights, would prevail over the seller, and that likewise one dealing with a

buyer in possession, even after the contract is recorded, if such recordation be withheld more than a reasonable time, would prevail over the seller. The court then continues (41 Fed. (2d), at p. 728):

"We do not think the legislature intended such a result, and are of the opinion that, if the section is not wholly void for uncertainty (a question we do not decide), it should be construed as declaring only that the title retaining stipulation in such a contract is without effect as to third parties unless and until the instrument is recorded, and that it is void as to those, and only those, who deal with one of the parties or in respect to the property during such period of nonrecord. Whether such scope is subject to a further exception in case of actual knowledge on the part of one so dealing, we need not determine.

"Certainly, if we have regard for the reasons underlying the legislation, the provision should not be interpreted as having a broader scope than we have indicated, and, inasmuch as in any possible practical view some liberties must be taken with the text, we are inclined to think that, if valid at all, the provision should be given this construction."

From the above quotation, it is at once obvious that the federal court did not directly hold that the statute involved was constitutional, but in fact had grave doubts on the point. That court merely held that in order to sustain its constitutionality the factual situation there presented necessarily did not come within the meaning of the statute.

In order to reach the interpretation suggested as a possible interpretation by the federal court, the following provisions must be read into the statute:

1. The voiding provision must be limited to the clause reserving title in the seller;

2. There must be inserted a provision that the contract must be recorded within a "reasonable" time;

3. There must be inserted a provision that only those dealing with the buyer during the period of nonrecordation are protected;

4. There must be inserted a provision that only those acting in good faith are protected;

5. There probably would have to be inserted a provision limiting the application of the statute to those dealing with the buyer, and excluding those dealing with the seller.

At least some of these provisions necessarily would have to be inserted in the statute in order to sustain its constitutionality. This court always, of course, attempts if possible to sustain the constitutionality of any legislative enactment, but this can only be done where the statute expresses a constitutional purpose. This court cannot, as already pointed out, in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the above qualifying provisions, it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial function.

From the above analysis, it is obvious that the judgment appealed from must be and hereby is affirmed.