[Civ. No. 12239. First Dist., Div. Two. Dec. 3, 1942.]

THE PEOPLE, Respondent, v. PACIFIC GUANO CO. (a Corporation), Appellant.

Pillsbury, Madison & Sutro, Sigvald Nielson, Frank J. Kockritz, Jr., and Lewis E. Hanchett, Jr., for Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondent.

STURTEVANT, J.—The plaintiff sued the defendant claiming $606.43 as taxes and penalties due the plaintiff under the provisions of division VI (§§ 1151-1300.29) of the Agricultural Code. The defendant filed an answer denying the material allegations of the complaint. Thereafter the parties prepared and filed an agreed statement of facts. The trial court made conclusions of law in favor of the plaintiff and from the judgment entered thereon the defendant has appealed.

During the period October 1, 1934, to and including June 30, 1937, the defendant was a dealer in commercial fertilizer and duly registered as such under section 1030 of the Agricultural Code. During the same period California Packing Corporation was also a registered dealer. It produced commercial fertilizer from fish meal and sold the same. In making its sales it complied with all the provisions of division V of chapter 7 of the Agricultural Code. During the same period the defendant sold California Packing Corporation 1883.94 tons of commercial fertilizer. The time said sale was made defendant did not know whether California Packing

Corporation intended to resell, use, store, or otherwise dispose of said fertilizer. Later it transpired that California Packing Corporation used said fertilizer upon lands owned or leased by it. If under the terms of the Agricultural Code the sale to California Packing Corporation was subject to tax, the amount of the assessment, $606.43, is the correct amount. However, the defendant earnestly contends that said sale was not subject to tax.

At the time of the sale sections 1021 and 1038 of the Agricultural Code provided as follows:

"Article 2. Fertilizing Materials.

"1021. The provisions of this article apply to any substance or mixture of substances intended to be used for promotion or stimulating the growth of plants, increasing the productiveness of plants, improving the quality of crops or producing any chemical or physical change in the soil. *They do not apply to sales for export outside the State, nor to sales of agricultural minerals to any registered producer, manufacturer, importer, agent or dealer in agricultural minerals, nor to sales of fertilizing materials to any registered producer, manufacturer, importer, agent, or dealer in commercial fertilizers.*"

"1038. Upon any sale *not exempt from the provisions of this article,* of commercial fertilizer, the registered person selling the same shall pay twenty-five cents per ton, and upon such a sale of agricultural minerals, ten cents per ton except where the agricultural mineral is sold to be used and is used in the manufacture of commercial fertilizer. Each registered person shall keep accurate accounts of sales of commercial fertilizers and/or agricultural minerals, and such accounts shall be open at all times to inspection by the director. A statement of sales, sworn to by the registered seller, shall be rendered to the director quarterly within thirty days after March 31, June 30, September 30, and December 31, of each year, and shall be accompanied by the amount of tonnage license tax required by this section. . . ." (Italics ours.)

■ Under the facts above recited it is patent that California Packing Corporation was a registered dealer and under the clear terms of section 1021 sales to it were not taxable. That being so, the provisions of section 1038 were not applicable to the sale made by the defendant to California Packing Corporation. ■ No ambiguity whatever can be seen in the

language used in either section. The power to construe does not exist. (*Davis* v. *Hart,* 123 Cal. 384 [55 P. 1060].)

█ The plaintiff concedes that a literal interpretation of section 1021 supports defendant's position. However, it claims that such an interpretation is violative of the intent of the Legislature and leads to absurd and discriminatory results. In that connection it states a supposititious case as follows: James Brown owns a 300-acre farm in Colusa County adjoining a 300-acre farm owned by California Packing Corporation. Both Brown and the California Packing Corporation buy fertilizer from the plaintiff and use it on their respective farms. Under said statutes the tax on the sale to Brown will be included in the purchase price but the sale to California Packing Corporation would be tax free. Continuing, the plaintiff contends that section 1021 should be construed as though there were added to it the following: "*. . . provided, however, such exemptions shall not relieve such registered persons from the tonnage license tax provided for in section 1038 when purchased fertilizing materials are used on their own lands within the state.*" We have no power to do so. █ Such a pretended construction would not be construction at all but would be legislation. Courts have no power to legislate. (*Seaboard Acceptance Corp.* v. *Shay,* 214 Cal. 361 [5 P.2d 882].) A similar contention was made in that case. Commencing on page 365 the court said: "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used. By the express provisions of section 1858 of the Code of Civil Procedure, 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. . . .' It is elementary that there can be no intent in a statute not expressed in its words; that the intention of the Legislature must be determined from the language of the statute. (*Ex parte Goodrich,* 160 Cal. 410 (Ann.Cas. 1913A, 56, 117 P. 451); *In re Application of the Monrovia Evening Post,* 199 Cal. 263 (248 P. 1017).) As stated in *City of Eureka* v. *Diaz,* 89 Cal. 467, at page 469 (26 P. 961, 962): 'It is a cardinal rule in the construction of statutes that the intent of the legislator should be followed, but this is subject to the imperative and paramount rule that the court cannot depart

from the meaning of language which is free from ambiguity, although the consequence would be to defeat the object of the act.'" And then on page 369 the court said: "This court cannot, as already pointed out, in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the above qualifying provisions, it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial function." (See, also, 23 Cal.Jur. 729 "Statutes," § 108.)

■ The conclusion expressed above is fortified by legislative construction. By reason of the enactment of chapter 187, Statutes of 1939, the proviso above set forth was added to section 1021 of the Agricultural Code. The enactment of that section will be deemed as intended to make a change in the law. (*Meyerfeld* v. *South San Joaquin Irr. Dist.*, 3 Cal.2d 409, 417 [45 P.2d 321].)

■ Finally, an administrative construction of the statute has been made which is in entire accord with what we have said. Section 1021 in substance was incorporated in section 4 of chapter 225 of the Statutes of 1903. It was repeated in the provisions of section 2 in chapter 349 of the Statutes of 1923. On the adoption of the Agricultural Code in 1933, the provision became section 1021 thereof. Down to the date of the commencement of this action it had been administered as hereinabove stated. Such long continued construction by the administrative department will be accorded great respect by the courts. (*Los Angeles* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10]; see, also, 23 Cal.Jur. 776 "Statutes," § 152.)

The judgment appealed from is reversed.

Spence, Acting P. J., and Dooling, J. pro tem., concurred.