[Civ. No. 14224. Second Dist., Div. Three. Apr. 17, 1944.]

JOHN D. GORDON et al., Appellants, v. THE CITY OF LOS ANGELES et al., Respondents.

Edward C. Purpus for Appellants.

Ray L. Chesebro, City Attorney, and Robert J. Stahl, Bourke Jones and Edward J. Olstyn, Deputies City Attorney, for Respondents.

WOOD (Parker), J.—Petitioners appeal from a judgment of dismissal which was based upon an order sustaining defendants' demurrer to the amended petition without leave to amend.

Petitioners sought a writ of mandate to compel the city council to refund a special assessment, "or remove" the lien therefor, placed against their lot for the improvement of a major highway. The amended petition was based upon the provisions of amendments made in 1935 to the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199) and to the Opening and Widening Act of 1903 (Stats. 1903, p. 376; Deering's Gen. Laws, 1937, Act 8198). The provisions thereof pertinent to this case are now embodied in section 5551 of the Streets and Highways Code.

The amended petition for a writ of mandamus alleged in substance: that petitioners owned a certain lot in the city of Los Angeles, on which the principal and interest on the assessment bonds amounted to $9,755.50; that the defendant

city of Los Angeles was a municipal corporation, and the individual defendants were members of the city council, the mayor, city clerk and the city treasurer; that on November 23, 1936, the Bureau of Assessments of the city of Los Angeles wrote to petitioner John Gordon, stating the "California State Legislature, at the 1935 Session, amended the Improvement Act of 1911 (Paving, etc.) and the Opening and Widening Act of 1903, to permit the re-assessing and the refunding of assessments levied upon *Major Traffic Arteries* under these two acts," that the electorate of California had validated the legislation in the November 1936 election, the city council had passed a resolution expressing the desire to apply any "funds available for the purpose in the fairest and most equitable manner possible," and under the council's instructions the bureau of assessments was at that time preparing a detailed survey of all projects in the city which would be eligible under the law for the special assessment relief, that it would be unnecessary for petitioner to employ counsel—that he would be "thoroughly and impartially represented by the City" and that petitioner should "not become too optimistic, as no one can forecast the final result"; that on September 1, 1942, petitioners wrote and presented a letter to the city council requesting relief from the assessment, together with penalties, and accrued interest and taxes, which then totaled $9,755.50; that on September 2, 1942, the city clerk replied by letter and stated that the council had referred the matter to the finance committee; that on October 15, 1942, the city clerk wrote another letter to petitioners advising them that their (the petitioners') communication was being "received and filed, the City having no funds available for this purpose"; that on February 15, 1943, the city engineer wrote to petitioner John Gordon to the effect that Laurel Canyon Boulevard had been classified as a major street, "under which classification ¼ cent Major Street Gasoline Tax Funds" were available both for acquisition and improvement. The petitioners further alleged that section 5551 of the Streets and Highways Code is mandatory; that the city treasury "according to the last figures of the City Treasurer" had available for use in paying "any claims or moneys herein, the sum of $49,630,527.49, unallocated revenue to reserve funds under budgetary and charter appropriations according to the budget estimate is $1,335,759.43, and under bond redemption and interest funds up to June 30,

1942, and according to information and belief, the allocation in budget will be even higher than this figure, to wit, $2,543,-499.54; that the assessed valuation of the City of Los Angeles in the year 1942-43 is $1,365,765,665.00''; and that petitioners have been materially injured, and have no plain, speedy or adequate remedy at law, and prayed that a writ of mandamus be issued.

Petitioners' principal contention is that the provisions of said section 5551 of the Streets and Highways Code are mandatory. That section provides as follows: "Whenever the legislative body determines that the work for which an assessment was previously made was for the construction, alteration, repair, improvement or betterment of any major traffic artery, designed for or generally used by the people of the city as a whole, *the legislative body may, in its discretion,* determine to aid the same by appropriating any funds available for such purpose. It shall not be necessary to set forth or give notice of such contribution in the resolution of intention or other proceedings hereunder." (Italics added.) The legislative body is not required by the provisions of said section to make any determination as to whether the work was or was not for the improvement of a major traffic artery. In the event, however, the legislative body does determine that the work was for the improvement of a major traffic artery, those provisions permit the legislative body, *in its discretion,* to give aid provided there are funds available for that purpose. The Legislature emphasized that said statute was discretionary by using the words *"in its discretion,"* in addition to the word "may" which is ordinarily used as a permissive term. In the case of *McGinnis* v. *Mayor and Common Council* (1908), 153 Cal. 711 [96 P. 367], the petitioners sought to compel the council to advertise the sale of a franchise, under a statute which provided that upon the filing of an application for a franchise the governing body "shall, in its discretion, advertise the fact of said application, together with the statement that it is proposed to grant the same." The court said at page 714: "The legislature has been careful to expressly provide that such body, upon the filing of the application, shall *'in its discretion* advertise,' etc. This, of course, does not mean that the body may in granting such a franchise in its discretion dispense with advertising, but it does undoubtedly mean that it may, in its

discretion, refrain from taking any step toward granting a franchise for the thing asked. In other words, the question, whether any such franchise shall be given to any one is, notwithstanding the presentation of the application, solely with such legislative body, to be determined by it in its discretion." ▮ The intention of the Legislature must be determined from the language of the statute. (*People* v. *Pacific Guano Co.* (1942), 55 Cal.App.2d 845, 848 [132 P.2d 254].) A court cannot depart from the meaning of language which is free from ambiguity. (*Seaboard Acceptance Corp.* v. *Shay* (1931), 214 Cal. 361, 366 [5 P.2d 882].)

▮ Petitioners' assertions that the writ should issue because "an amount sufficient to refund the bond" is in the city treasury, and that the project for which they had been assessed was classified as a "major street," are partially answered above. As above stated, the city was not required to determine that a street came within any particular classification and, even if it did make such determination it was under no legal obligation to grant relief to the property owners who had been assessed for the improvement. If it is petitioners' contention that defendants became legally obligated to grant the relief by reason of the fact that they had classified Laurel Canyon Boulevard as a "major street," and by reason of the council's resolution expressing a desire to apply any "funds available for the purpose in the fairest and most equitable manner possible," said contention cannot be sustained. The discretionary power to refuse to take any step toward granting the relief sought continues until final official action has been taken by the legislative body granting the relief, notwithstanding any previously existing intention on its part as to what its final action would be. (*McGinnis* v. *Mayor and Common Council* (1908), *supra*, p. 714.)

▮ Furthermore, the petition shows that petitioners' lot was but one of many lots against which assessments had been placed to pay for certain projects, and that the contemplated survey was to include "all projects in the City of Los Angeles which would be eligible under the law for the special assessment relief." The petition does not show that the survey had been completed, and it does not show that any available funds had been apportioned, as required by section 5552 of the Streets and Highways Code, "pro rata between all properties assessed . . . in the same ratio that the original assessment bore to the total assessment against all properties

assessed.'' In other words, although the petition further alleged that ''according to the last figures of the City Treasurer, there is available for use in paying any claims or moneys herein, the sum of $49,630,527.49,'' etc., the petition does not show what proportion thereof the petitioners herein were entitled to receive, or have applied against the assessment on their lot. The matter of granting aid is discretionary with the legislative body, but the manner of apportioning appropriated funds is not discretionary. As shown above, section 5552 of the Streets and Highways Code required that any such appropriation must be apportioned in a certain manner. The statute does not contemplate a separate appropriation for the benefit of a single parcel of land to the exclusion of other parcels of land similarly situated.

The judgment is affirmed. The appeals from the order sustaining the demurrer without leave to amend, and from the order discharging the alternative writ of mandate are dismissed.

Desmond, P. J., and Shinn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 15, 1944. Curtis, J., Carter, J., and Schauer, J., voted for a hearing.