[Civ. No. 14761. Second Dist., Div. Two. Mar. 29, 1945.]

JOHN H. SHELBY, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

[Civ. No. 14762. Second Dist., Div. Two. Mar. 29, 1945.]

JOSEPH M. DEVERE, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Samuel A. Rosenthal and Burton B. Crane for Appellants.

Frank Karr, C. W. Cornell and O. O. Collins for Respondents.

MOORE, P. J.—Two actions having arisen out of the same event are consolidated for the purpose of decision. Appellant Shelby suffered serious injuries while operating Devere's truck and trailer which with their cargo were almost wholly destroyed as the result of their collision with the switch engine and tender of respondent company operated by the natural defendants. Judgments having been entered against plaintiffs pursuant to direction by the court, the matter comes here on their appeal.

On the evening of April 26, 1943, pursuant to instructions of his employer, Shelby loaded the truck and trailer with 6,400 gallons of kerosene at San Pedro for delivery at Vernon. He traveled northerly on Alameda Street and on its westerly roadway which has two lanes separated by a double white stripe down its center. About 3:30 o'clock of the following morning he collided with the tender on a spur track which crossed the westerly roadway in a northwest-southeast direction, the engine having pushed the tender into the westerly roadway immediately prior to or contemporaneously with the arrival of the truck. The tracks were imbedded in the concrete pavement flush with its surface. Shelby's visibility as well as his vision was good. His own headlights illuminated the pavement for 200 feet. The light thus shed was supplemented by the arc light over the westerly portion of the roadway near the point of impact. While deposing that he could not see the spur at its junction with the main line, Shelby admitted that he could see the railway tracks on the private right of way for 300 feet and that he could safely drive at a reasonable speed down Alameda without burning his own lights. Moreover, while he was 150 feet south of the point of collision the headlights of an approaching southbound truck 250 feet north of that point added to the street's electrification. While he testified that the headlight on the tender was not illuminated until after the impact, he admitted that he could see an object the size of a man at a distance of 200 feet. He knew the road. Having driven along Alameda Street daily for 16 years, he knew that the spur track lay upon the westerly roadway of Alameda and that it entered the east lane just north of a bottling works building. He had observed for some blocks south of the scene of the collision other spur tracks intersecting the westerly roadway.

His immediate view was a warning of danger. The spur track lies along and upon the westerly roadway for a distance of 128 feet. Its south rail leaves the west curbing of Alameda 96 feet north of the bottling works' building and intersects the east curb of the west roadway 32 feet south of the north wall of that building. The south rail intersects the double stripe 88 feet north of the point at which it enters the east curb of the west roadway. In approaching the locus at which he would cross the track, Shelby proceeded alongside the slightly curving spur track for a distance of 88 feet. He testified that he heard neither whistle nor bell; that there was neither automatic signal nor crossarms; that he saw no person standing in the street with flag or lantern; that he did not see the spur track, the rails of which were at grade; that the trailer of the oncoming truck passed him as he was 40 feet south of the point of impact; that he applied his brakes at once but crashed into the tender.

The consideration of an appeal from a judgment entered pursuant to an instructed verdict is restricted by the rules announced in *Gish* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 570, 572 [90 P.2d 792]. Accordingly, unless a verdict for plaintiff be so lacking in evidentiary support that the appellate court would be impelled to reverse it, then it is error to direct a verdict in favor of defendant.

Respondents base their argument upon the hypotheses that Shelby knew the exact location of the spur track; that he could see it 200 feet ahead; that he could stop within 60 feet; and that section 576, subdivision (a), Vehicle Code, is a mandatory statute by which the driver of a truck laden with inflammable liquids is inhibited from driving over the track without first stopping to look and listen. In support of the judgment respondents marshal the facts above outlined and argue therefrom that by reason of the visibility at the scene of the accident; of the moderate speed of the truck; of the distance within which it could be stopped; and of Shelby's intimate knowledge of the exact location of the spur track, his failure to stop was negligence which wholly caused or contributed to cause his own injuries and the destruction of the conveyances and their cargo, citing *Baldwin* v. *Pacific Electric Ry. Co.*, 208 Cal. 364 [281 P. 380]; *Koster* v. *Southern Pacific Co.*, 207 Cal. 753, 756 [279 P. 788]; *Young* v. *Pacific Electric Ry. Co.*, 208 Cal. 568 [283 P. 61]. In response thereto

appellants distinguish those cases in that there was in fact in each instance a sign or other warning of the danger.

These arguments would be of interest had Shelby been driving his own family automobile under the same conditions as those which confronted him on the night of his accident.

■ But the statute in question is positive and direct and is penal in nature. Subdivision (a) thereof reads as follows: "The driver of any motor vehicle carrying passengers for hire, or of any school bus carrying any school child, or of any motor truck carrying explosive substances or inflammable liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a steam railway, interurban or suburban electric railway, shall stop such vehicle not less than 10 nor more than 50 feet from the nearest rail of such track and while so stopped shall listen, and look in both directions along such track for any approaching railway train, interurban car or other vehicle using such rails before traversing such crossing, except as hereinafter provided."

This subdivision defines only two situations in which a motor truck conveying inflammable liquids may proceed without stopping before crossing the track of a steam railway. With those exceptions, the obligation upon the operator of a motor truck with such a cargo to bring the vehicle to a complete stop and to look and listen in both directions along the track for approaching trains is continuous. His failure to do so is a misdemeanor.

■ The statutory inhibition of an act by the imposition of a penalty for its violation creates an absolute standard of behavior. In forbidding a kerosene-laden motor truck to cross a railroad track without first stopping, section 576 establishes a rule of the road which is not debatable. It names but two conditions under which such a truck may proceed without stopping, namely, either where an officer is on duty and directing traffic to proceed or where an automatic signal is in operation, indicating that it may continue. That such a stricture upon the transportation of specified commercial cargoes imposes hardships upon drivers of such motor trucks in traversing a boulevard which is crossed at frequent intervals by spurs off a main line railway is no excuse for violating the statute. The driver of such a truck is not excusable because he does not see the track.

■ That it was not intended under any circumstances to exempt trucks carrying inflammable liquids from the opera-

tion of the statute is indicated by the amendment to the statute in 1931. At that time the Legislature added to subdivision (a) a proviso that motor vehicles carrying passengers for hire shall not be required to stop at spur track crossings "where, with the approval of the railroad commission, distinctive signs are displayed indicating that no stop need be made unless a train is approaching." That exception has constituted subdivision (d) of the act since its codification in 1935. Yet no such privilege has by any amendment ever been accorded to the motor truck with a cargo of inflammables. It must stop before crossing every railroad track even though signs were there displayed with the approval of the railroad commission. That such is the intent of the statute is clear from its plain and unambiguous language. (*In re Alpine,* 203 Cal. 731 [265 P. 947, 58 A.L.R. 1500]; *McNamara* v. *Steckman,* 202 Cal. 569 [262 P. 297].) ■ It must be so construed as to give meaning and effect to every clause thereof. (*Ahern* v. *Livermore Union High School Dist.,* 208 Cal. 770 [284 P. 1105].) ■ Another familiar rule of construction is that where a statute enumerates things upon which it is to operate it is to be construed as excluding from its effect all those not expressly mentioned. (59 C.J. 984.)

■ Since section 576 does not provide that vehicles freighted with inflammables may proceed across a railroad track under the conditions specified in subdivision (d) or under any other condition without stopping, appellant driver was in duty bound to stop before attempting to cross the track and was negligent in failing to do so.

■ In this view of the statute, therefore, the arguments of appellants are immaterial to a consideration of the liability of defendants if the violation of the statute by the operator contributed to cause his injuries and the destruction of the truck and trailer and the cargo. Where the violation of a statute by the plaintiff has contributed to cause the accident such violation constitutes a defense in an action for negligence or it is a prima facie case of contributory negligence which will preclude recovery by the plaintiff if the violation contributed proximately to the injury sustained by him. (38 Am.Jur. § 196, p. 878; 38 Am.Jur. § 214, p. 898; 42 C.J. § 979, p. 1201.) That the failure of Shelby to stop before crossing the track caused or contributed to cause the accident is not open to argument. There would have been no collision

if the truck had stopped 10 feet south of the point of its attempted crossing.

The cases cited by appellants in support of their argument that the question of Shelby's negligence should have been submitted to the jury are *Downing* v. *Southern Pacific Co.*, 15 Cal.App.2d 246 [59 P.2d 578]; *Harper* v. *Northwestern Pacific Ry. Co.*, 34 Cal.App.2d 451 [93 P.2d 821]; *Lawrence* v. *Southern Pacific Ry. Co.*, 189 Cal. 434 [208 P. 966]. They are not apropos. In each of them the driver had no knowledge of the crossing. In none of them was there a mandatory step required of the driver. In no instance was the vehicle a "motor truck carrying . . . inflammable liquids as a cargo."

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 24, 1945. Carter, J., voted for a hearing.