[Civ. No. 4112.   Fourth Dist.   Feb. 20, 1950.]

COUNTY OF ORANGE, Respondent, v. RUSSEL GEORGE COLE et al., Appellants.

R. C. Mize and Roy V. Shafer for Appellants.

Joel E. Ogle, County Counsel, George F. Holden and Stephen K. Tamura, Deputy County Counsel, for Respondent.

GRIFFIN, J.—Plaintiff brought this action to quiet title to an easement for a public highway over a 30-foot strip approximately 1,275 feet long running in a northerly and southerly direction and being the easterly 30 feet of 17 lots numbered 18 to 34 inclusive, of a recorded subdivision map of Tract No. 1052, in Orange County. The lots are contiguous and each is 75 feet wide, facing west on a public street (Lorna Street). The strip in question is the rear 30 feet of each of said lots. The respective defendants herein own one or more of these lots. There are also contained in this subdivision Lots 1 to 17 inclusive. All defendants, except four, answered, denied the easement, and alleged ownership in fee respectively of those portions of the strip within their respective lot boundaries. The remaining four defendants defaulted but were represented at the trial by the same attorneys, appointed by the court for that purpose, pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, C. 888, 54 Stat. 1178, § 520, 50 U.S.C.A. App. § 501 et seq.

The case was tried on stipulated facts. They may be summarized as follows: On February 15, 1940, the Farmers and Merchants Trust Company of Long Beach recorded a final map of Tract No. 1052, pursuant to section 20 of the Subdivision Map Act (Stats. 1937, ch. 670, p. 1863, now Bus. & Prof. Code, § 11500 et seq.). The easterly 30 feet of Lots 18 to 34 is the area involved in this litigation and on the map of the subdivision, as recorded, the strip is labeled: "Dedicated for future street." The writing endorsed on the map also offered for dedication that portion of Lorna Street running through the tract. The board of supervisors, on February 13, 1940, accepted the offer of "Lorna Street" for dedication, but the offer of the 30-foot strip of land above mentioned for a future street was, on said date, rejected by it. On June 24, 1947, seven years after such rejection, there was served upon said board and duly recorded a document signed by the owners of all of Lots 18 to 34 inclusive, reciting that the signers "do by these presents declare that said offer of dedication heretofore made by reason of said endorsement has been and is hereby revoked, insofar as said lots 18 to 34 . . . are concerned, and said lots hereinbefore mentioned have been freed and are free

from public easement therein." On February 17, 1948, the board adopted a resolution accepting the offer of dedication of the 30-foot strip by the Farmers and Merchants Trust Company of Long Beach, predecessors in interest of defendants. Defendants are the owners of said lots through deeds containing lot descriptions by reference to the map of Tract No. 1052. Upon this evidence the trial court found in favor of plaintiff. Defendants appealed.

The sole issue is whether the purported revocation served and recorded by the lot owners precluded the board from thereafter accepting the offer of dedication. It is respondent's position that when the trust company recorded the final map, it made an irrevocable offer of dedication of the 30-foot strip, which could be accepted by the county at any time in the future, and that it was beyond the power of the defendants to revoke the offer, either expressly or by implication. Respondent concedes that under the common-law rule an offer of dedication is subject to revocation until accepted. It contends, however, that a statutory offer is now, under the laws of this state, subject to the terms and conditions of the statute and that in ascertaining the rights of the parties the extent to which the common-law rules have been modified by the adoption of the Subdivision Map Act must be considered in determining the rules respecting revocation of offers of dedication, citing *Stump* v. *Cornell Construction Co.*, 29 Cal.2d 448, 450 [175 P.2d 510].

The relevant portion of section 20 of the Subdivision Map Act, as then in force, provides:

"If at the time the final map is approved any streets are rejected the offer of dedication shall be deemed to remain open and the governing body may by resolution at any later date, and without further action by the subdivider, rescind its action and accept and open said streets for public use, which acceptance shall be recorded in the office of the county recorder. If a resubdivision or reversion to acreage of the tract is subsequently filed for approval, any offer of dedication previously rejected shall be deemed to be terminated upon the approval of the map by the governing body."

Defendants cite many of the earlier cases holding that the recording of a subdivision map is merely an offer of dedication of streets shown thereon and that such offer can be withdrawn before its acceptance. Among these cases are *People* v. *Reed* (1889), 81 Cal. 70, 77 [22 P. 474, 15 Am.St.Rep. 22]; *Eltinge* v. *Santos* (1915), 171 Cal. 278 [152 P. 915, Ann.Cas. 1917A

1143] ; and *Rice* v. *Boyd,* 2 Cal. Unrep. 196. In this connection it is argued that it must not be presumed that the Legislature in the enactment of statutes intends to overthrow long established principles of law unless such intention is made clearly to appear by expressed intention or by necessary implication, citing such cases as *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 644 [122 P.2d 526] ; *Armstrong* v. *Smith,* 49 Cal.App.2d 528, 536 [122 P.2d 115] ; *People* v. *Pacific Guano Co.,* 55 Cal.App.2d 845, 848 [132 P.2d 254] ; and *Pacific Coast etc. Bank* v. *Roberts,* 16 Cal.2d 800, 805 [108 P.2d 439]. Defendants also point out that before the enactment of the Subdivision Map Act, the rejection by the governing body of an offer of dedication put an end to and nullified such offer and that under a well-settled rule of law then existing the rejection of a proposal or offer completely nullified such offer, and argues that the Legislature, by the enactment of this new act, apparently intended to change that feature of the law and provided that ''If . . . any streets are rejected the offer of dedication shall . . . remain open and the governing body may by resolution at any later date, and without further action by the subdivider, rescind its action and accept and open said streets for public use''; that this is the only change in the existing law made by the section and that notwithstanding the rejection, the offer shall remain open and the rejection may be rescinded; that no place in said section are there any words prohibiting the withdrawal of that continuing offer; that therefore the right to revoke an offer remains in the offerer; and that the governing body may ''rescind its action and accept'' the offer *''if there then be one''*; that under section 11616 of the Business and Professions Code the principle of law that an offer may be revoked or withdrawn at any time before its acceptance has not been changed or affected by that section and that before plaintiff can prevail it must show that this section takes away an offerer's right to revoke an unaccepted offer. In support of this contention they cite section 1586 of the Civil Code, which reads : ''A proposal may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards''; and they contend that under section 1587 of the Civil Code a proposal is revoked by the communication of notice of revocation by the proposer to the other party before acceptance; that therefore the subdivider may withdraw his offer of dedication after its rejection and before its acceptance. It is then argued that to cancel the long-existing principle of law that a proposal may be

revoked by the proposer before acceptance, the intent to cancel it would have to be clearly set forth in the statute revoking such right; that by the words of the statute itself, "the offer of dedication shall remain open," the Legislature clearly indicated that an offer may still be revoked before acceptance, but if the offer remains open the board may accept the offer "without further action by the subdivider," i. e., without a new offer by the subdivider; that the Legislature was presumed to have known the law that an offerer has a right to revoke his offer, and if it intended to change that law it would have added words to that effect, and since there were no such words in the section the courts may not add such intent to the legislative enactment.

It is then argued that provision is made in the act itself providing that the subdivider still has the right to withdraw his offer by the approval of a resubdivision or a reversion to acreage, and therefore the Legislature intended to declare that this was only one method evidencing withdrawal of an offer, and that the right of withdrawal by all other methods was not affected.

A somewhat similar argument was presented in *Stump* v. *Cornell Construction Co., supra,* and rejected. The lot there under discussion was a part of a subdivided tract. The filed map offered for dedication for "future street" and "future alley" certain strips of land in the subdivision, the same as in the instant case. The city council accepted the map and excepted one of the strips thus marked. Shortly after the approval of the map the lot there involved was conveyed by a deed, without reservation. Later, the city council adopted a resolution accepting the strip, crossing that lot and others, as a public alley. The Supreme Court held that the words of dedication on the map were regarded as an offer to dedicate and that the older cases holding that a conveyance without reservation amounted to a revocation of an offer for dedication were no longer applicable; that those cases "were decided before the adoption of the Subdivision Map Act in 1937, and the provisions of that act clearly indicate an intention to abrogate the common law rule whereby an offer to dedicate might be *impliedly* revoked by a conveyance without reservation." It is interesting to note, however, that the court reserved its opinion as to whether the statute here under discussion intended to permit a termination of the offer by "express revocation," such as is evidenced in the instant case.

Under the common-law rule, a dedication may be either

express or implied. (*Diamond Match Co.* v. *Savercool*, 218 Cal. 665 [24 P.2d 783] ; 26 C.J.S. § 13, p. 65.) It is equally true that under such rule there may be either an implied or express revocation of such dedication, in the absence of a statute precluding it. (*Stump* v. *Cornell Construction Co.*, *supra.*) When the Stump case was decided sections 1586-1587 of the Civil Code were in effect and those sections make no distinction between an "implied" and an "express" revocation. Likewise, section 11616 of the Business and Professions Code is silent as to any distinction being made between an implied revocation and an express revocation. Dedications made in conformity with a statutory method of dedicating lands to the public are called "statutory dedications" and under the laws of some of the states, a statutory dedication is an express dedication which operates by way of a grant. Under the statutes thereof, where an owner has had his land surveyed, platted and acknowledged, and has recorded the plat, such parts as the plat shows he intended to dedicate as streets, parks, etc., are as fully beyond his control as if he had deeded them to a legal person for the uses mentioned, and where such statutes exist, the filing of the plat has the same effect as if it contained a certificate in express language dedicating the streets and alleys designated thereon to the public and such dedication is irrevocable. These statutes merely provide a new mode by which the dedicator's intention to grant or convey his land may be carried into effect. (26 C.J.S. § 3, p. 51.) Where an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use. (*Berton* v. *All Persons, etc.*, 176 Cal. 610 [170 P. 151] ; *Wheeler* v. *City of Oakland*, 35 Cal.App. 671 [170 P. 864] ; 26 C.J.S. § 23, p. 78.)

In Illinois it was provided by statute that the making out, acknowledging and recording of a map or plat, as required by the act, constituted a conveyance vesting the fee simple title of the streets, alleys, etc., in the town or city and, that the making and recording of a map was to be regarded as a mere offer to dedicate until accepted by the municipality or the public, and that an acceptance must be made within a reasonable time by the public authorities, subject to the exception that the dedicator would be estopped to deny the dedication when private rights were shown to have intervened. (Ann. Cas. 1917A 1119-1120.)

In *Kimball* v. *Chicago*, 253 Ill. 105 [97 N.E. 257], in con-

struing that statute, it was held that if the plat was a statutory one, the offer could only be withdrawn by a vacation of the plat under the statute.

In *Ramstad* v. *Carr*, 31 N.D. 504 [154 N.W. 195, 203, L.R.A. 1916B 1160], where the nature of a statutory offer of dedication in that state was concerned, the court said:

"The recording of the plat, and sale of lots by the owner with reference thereto, was a grant by the owner to the public of the public places marked on the plat. This grant, it is true, was not binding upon, or effective against, the municipality until accepted by it; but the tender of conveyance on the part of the owner continued until withdrawn by the owner, or until it was rejected by the municipality. The statutes of this state fix, not only the method in which a dedication may be effected by the filing of a plat, but they also prescribe the manner in, and conditions under, which the plat may be vacated and the dedication revoked. Sections 3959-3966 Compiled Laws. . . .

"As the dedication was made by the statutory method of filing a plat, and the sale of lots by the owner with reference thereto, it could be withdrawn only by a vacation of the plat under the statute."

In *Burroughs* v. *City of Cherokee*, 134 Iowa 429 [109 N.W. 876, 878], in expressing the reason for a similar construction of a statutory dedication, the court said:

"Ordinarily tracts which are platted are at some distance from the populous portions of the town or city and the proprietor, in offering to change his property from rural to urban, must be presumed to anticipate some delay in the acceptance and improvement of the streets and alleys separating the lots and blocks. When sparsely settled, years may elapse before the necessity will arise for grading or otherwise improving the streets, and until then the public ought not to be deprived of the right to accept them."

In 4 McQuillin on Municipal Corporations (2d ed. rev. 1943), § 1717, p. 813, it is said:

"If a plat is a statutory one, and an acceptance is necessary, the offer can only be withdrawn before acceptance by a vacation of the plat under the statute, but if it is a common-law plat the offer of dedication may be withdrawn in other ways." (See, also, 26 C.J.S. § 60b, p. 149.)

That which is involved here is a statutory offer of dedication. Section 11616 of the Business and Professions Code has definitely changed the former rules pertaining to

the revocation of an offer of such a dedication. Under this section the rejection of an offer of dedication does not require that a new offer be made by the proposer. That section now provides that such rejection no longer *terminates the offer,* but it "shall remain open." The only provision in that section for termination or revocation of the offer is the approval of a map of a resubdivision or reversion of the tract to acreage.

Respondent argues that therefore it is apparent that the Legislature, by enacting section 20 of the Subdivision Map Act, intended to achieve for California the results obtained in the above-mentioned jurisdictions. The question resolves itself to this: "By affirmatively providing for the termination of offers of dedication by a resubdivision or a reversion to acreage with the approval of a public body, did the legislature intend to exclude the method of directly withdrawing such offer?" The statute, as enacted, is broad enough to cover both express and implied revocations for it definitely recites that the offer *remains* open notwithstanding the rejection, and the governing body, *at any later date,* may accept the streets thus offered for dedication.

In *Johnston* v. *Baker,* 167 Cal. 260, 264 [139 P. 86], the rule is stated to be ". . . that affirmative expressions in a statute introducing a new rule imply a negative of all not within their purview." (See, also, *Shelby* v. *Southern Pacific Co.*, 68 Cal. App.2d 594, 599 [157 P.2d 442] ; 23 Cal.Jur. § 118, p. 740.)

A dedication which is revocable can be revoked by several different methods, such as applying the property to an inconsistent use, changing the offer of dedication, or conveying the property. The dedicator's death may also effect a revocation. (26 C.J.S. § 60, p. 148.) As to statutory dedications, the right to revocation by means of the *implied* revocations thus indicated is, in this state, abrogated by statute, under the ruling in the Stump case. It would be incongruous to hold that the statute abrogated the common-law rule to this extent and that no longer could a statutory offer to dedicate be "impliedly revoked," but that it, nevertheless, could be "expressly revoked." Since it has been interpreted by the Supreme Court that it was the legislative intent that by the enactment of section 20 of the Subdivision Map Act the Legislature intended to abrogate the common-law rule whereby an offer to dedicate might be impliedly revoked by a conveyance without reservation, we must conclude, in the absence of any exceptions noted in the act itself, that .it intended to abrogate the right to expressly revoke the offer in any other manner than that pre-

scribed by the act. (*Walters* v. *Bank of America etc. Assn.,* 9 Cal.2d 46, 52 [69 P.2d 839] ; *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1].)

Some point is made by defendants that the board subsequently accepted the map dedicating this strip without rescinding its former action rejecting it. The stipulation of facts does not completely cover this point. The minutes of the board do show that by resolution the offer of dedication was finally accepted and the trial court found that the board did rescind its action of rejection and accepted the offer. Even though the procedure adopted may have been irregular we are not prepared to hold that a recision of the former action was not effected by the action of the board in ultimately accepting the continuing offer to dedicate.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 20, 1950. Carter, J., and Schauer, J., voted for a hearing.