[No. C002976. Third Dist. June 26, 1989.]

AMERICAN RIVER FIRE PROTECTION DISTRICT, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF SACRAMENTO COUNTY et al., Defendants and Respondents;
RIO LINDA/ELVERTA FIRE PROTECTION DISTRICT et al., Defendants and Appellants.

COUNSEL

Ross & Scott, William D. Ross, Diana P. Scott and Corin L. Kahn for Plaintiff and Appellant.

Sachse, James, Croswell & Lopardo and Robert H. James as Amicus Curiae on behalf of Plaintiff and Appellant.

Balfrey & Abbott, William W. Abbott, Howard Shook, Greve, Clifford, Diepenbrock & Paras, William L. Baker and Scott R. Keen for Defendants and Appellants.

L. B. Elam, County Counsel, and Michele Bach, Deputy County Counsel, for Defendants and Respondents.

## Opinion

**PUGLIA, P. J.**—Special districts are agencies of government performing governmental or proprietary functions within limited boundaries (Rev. & Tax. Code, § 2215). The adoption of article XIII A of the Constitution (Prop. 13 on the June 6, 1978, ballot) reduced the amount of property tax revenues available to special districts and other local agencies of government. To ensure the continuation of essential services, the Legislature enacted a comprehensive plan to ameliorate the fiscal impact of Proposition 13 on local agencies of government. (Stats. 1979, ch. 282, pp. 959-1059.)

As part of the plan the Legislature created in each county a Special District Augmentation Fund (SDAF). A percentage of property tax revenues generated in each special district is allocated to the SDAF. These funds are then disbursed to special districts by the board of supervisors. The disbursements to a special district are not necessarily equivalent to the property tax revenues allocated from that district to the SDAF.

Plaintiff American River Fire Protection District regularly contributes more to the SDAF than it receives in disbursements. Plaintiff contends that because it did not exist as an entity in fiscal year 1978-1979 when the SDAF was created, it is not required to contribute to the SDAF a percentage of its property tax revenues as otherwise required by Revenue and Taxation Code section 98.6 (Stats. 1979, ch. 282, § 59, pp. 1025-1036; hereafter all statutory references to an undesignated code are to the Revenue and Taxation Code). Plaintiff sought relief by way of mandate to compel the Sacramento County Board of Supervisors, the County of Sacramento and its auditor-controller (collectively defendant) to allocate property taxes due plaintiff under sections 96 or 97, and 98, without deducting an amount for contribution to the SDAF.[1] The trial court denied the writ. We shall reverse and order the writ to issue.

---

[1] Defendant in turn cross-complained for declaratory relief against other special districts including appellants Rio Linda/Elverta Fire Protection District and Citrus Heights Fire Protection District which, like plaintiff, were not in existence as entities in 1978-1979 when the SDAF was created. There are factual differences in the situations of the three appellant districts. Plaintiff district arose from the consolidation of two former districts (Gov. Code, §§ 56021, 56030), while the other two appellants are reorganized districts. (Gov. Code, §§ 56021, 56073.) In addition appellant Rio Linda/Elverta Fire Protection District is a multi-county district (§ 98.6, subd. (a)). Although in this opinion we shall analyze the statute in the

Special districts are authorized by a variety of statutes to provide services such as police and fire protection, water, sewage disposal, road maintenance and street lighting. (See, e.g., Gov. Code, §§ 16271, subd. (d), 56036, 61600; Health & Saf. Code, § 4113; *Requirement of Special Districts to Contribute to Special District Augmentation Fund,* 70 Ops.Cal.Atty.Gen. 87 (1987).) Traditionally, special districts have received most of their revenue from property taxes. Proposition 13 sliced deeply into the tax base of local agencies of government, particularly special districts. (*Marin Hospital Dist.* v. *Rothman* (1983) 139 Cal.App.3d 495, 479-499 [188 Cal.Rptr. 828]; 70 Ops.Cal.Atty.Gen., *op. cit. supra,* at p. 87.)[2] Besides losing existing property tax revenues, local government lost the flexibility to increase revenues because Proposition 13 prohibits new property taxes, limits annual assessment increases to two percent, and prohibits local government from imposing special taxes without approval of two-thirds of the voters. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 220 [149 Cal.Rptr. 239, 583 P.2d 1281]; *O'Brien, supra,* at p. 1.)

As a short-term response to the funding shortfall experienced by local agencies of government as a result of Proposition 13, the Legislature in 1978 enacted Senate Bill No. 154. (Stats. 1978, ch. 292, pp. 583-612.) Among other things, Senate Bill No. 154 provided hundreds of millions of dollars in state assistance or "bailout" payments to local governments to insure they would maintain their fiscal positions at a minimum level of 90 percent of their pre-Proposition 13 budgets. (*O'Brien, supra,* at p. 1.)

The following year, the Legislature passed Assembly Bill No. 8 as a long-term solution to the financial straits imposed by Proposition 13 upon local governments. (Stats. 1979, ch. 282, pp. 959-1059; *O'Brien, supra,* at p. 2.) Among other things, Assembly Bill No. 8 added section 98.6 to the Revenue and Taxation Code creating the SDAF to provide a locally administered program of financial assistance to special districts. Stats. (1979, ch. 282, § 59, pp. 1025-1036; see *O'Brien, supra,* at p. 2.) The SDAF is funded by property tax revenues derived from the special districts according to a formula contained in section 98.6. Under the formula, a ratio is computed for each special district equal to the amount of state assistance or bailout payments received in fiscal year 1978-1979 under Senate Bill No. 154 divided by the sum of 1978-1979 bailout payments plus the amount of property

factual context of plaintiff's circumstances, our interpretation of the statute applies as well to consolidated and reorganized districts which were not in existence as entities in 1978-1979 and thus in favor of all the appellants.

[2] As a result of Proposition 13, property taxes dropped from $954 million in 1977-1978 to $532 million in 1978-1979. (O'Brien, Stepchild of Proposition 13: A Survey of the Special District Augmentation Fund, Senate Com. on Local Gov. (Mar. 29, 1985) p. 1; hereafter cited as *O'Brien.*)

tax revenue allocated to the district in the 1978-1979 fiscal year. (*O'Brien, supra,* p. 2.) This ratio, expressed as a percentage figure, determines the amount of its property tax revenues each district must contribute annually to the SDAF. (*Ibid.*)[3]

Property tax revenues are collected by the county. (§ 93.) Each special district is then allocated an amount of the property taxes collected based upon a formula set forth in sections 97 and 98. However, as to those districts which received bailout payments for the 1978-1979 fiscal year, a part of the property tax revenues otherwise allocable to the district is instead allocated to the SDAF based on the formula set forth in section 98.6. (See 70 Ops.Cal.Atty.Gen., *op. cit. supra,* at p. 88.) Thereafter the board of supervisors redistributes the SDAF back to the districts in amounts deemed appropriate by the board within its discretion. (§ 98.6; see *American Canyon Fire Protection Dist.* v. *County of Napa* (1983) 141 Cal.App.3d 100, 105-106 [190 Cal.Rptr. 189]; see *O'Brien, supra,* at pp. 2-3, 16, 20-21.)

The SDAF is a mechanism for revenue sharing among the special districts within a county. The annual SDAF disbursements to some districts are greater than their annual contributions while the annual contributions of other districts to SDAF exceed the amounts the board returns to them from SDAF. A special district might be a net beneficiary one year and a net contributor the next. (*O'Brien, supra,* at pp. 20-21.) Districts that are net contributors subsidize those that are net beneficiaries.

---

[3] Section 98.6 states in relevant part: "(a) Notwithstanding any other provision of this chapter, the amount [of property tax revenues] allocated pursuant to Sections 96 or 97, and 98, to a special district . . . shall be reduced by an amount computed as follows:

"(1) A ratio shall be computed for each of the special districts equal to the amount of state assistance payment [bailout] for the special district for the 1978-79 fiscal year divided by the sum of the state assistance payment [bailout] for the special district plus the amount of property tax revenue allocated to the special district for the 1978-79 fiscal year pursuant to Section 26912 of the Government Code.

"(2) The amount by which the allocation pursuant to Sections 75.70, 96 or 97, and 98, shall be reduced shall be equal to the allocation multiplied by the factor computed for the district pursuant to paragraph (1).

". . . . . . . . . . . . . . .

"(5) The total of all amounts computed for special districts within each county shall be deposited in the Special District Augmentation Fund which shall specify amounts for each governing body as defined in Section 16271 of the Government Code and which shall be allocated pursuant to the subdivision (b).

". . . . . . . . . . . . . . .

"(b) There is hereby created a Special District Augmentation Fund in each county to augment the revenues of special districts . . . .

". . . . . . . . . . . . . . .

"(d) . . . The governing body shall disburse the entire amount of the fund to special districts during the fiscal year . . . ."

With this background in mind, we turn to the facts of the case. Before plaintiff district was formed in July 1983 fire protection in the area of Sacramento County which plaintiff now serves was provided by two contiguous fire protection districts, Arden and Carmichael. Both the Arden and Carmichael districts received bailout payments pursuant to Senate Bill No. 154 for the fiscal year 1978-1979. Following the enactment of section 98.6, the property tax revenues allocated to each district were annually reduced by the amount of their required contributions to the SDAF. In July 1983, the Arden and Carmichael fire districts were legally dissolved and plaintiff district was formed. Plaintiff's geographical service area is coterminous with the combined service areas of its predecessors, the Arden and Carmichael districts.

Notwithstanding that plaintiff is a new district (Gov. Code, § 56030) not in existence in the 1978-1979 fiscal year and therefore did not receive bailout payments, defendant has continued to reduce plaintiff's property tax allocations for the benefit of the SDAF pursuant to section 98.6. Because bailout payments for the 1978-1979 fiscal year to the former Arden and Carmichael fire districts benefitted the geographic area now served by plaintiff, defendant contends plaintiff succeeds to the obligations of those former districts to contribute to the SDAF and must have its property tax allocations reduced accordingly.

Plaintiff contends that because it is a new entity not in existence in 1978-1979 and therefore did not receive bailout payments for that fiscal year, it is not within the literal language of section 98.6 and need not contribute any part of its property tax revenues to the SDAF.

As a basic rule of construction, the courts are bound to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) "Where statutory language is clear and unambiguous, ' "there is no need for construction and courts should not indulge in it." [Citation.]' " (*Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 825 [225 Cal.Rptr. 43].)

Section 98.6 applies in terms to special districts which received bailout payments in fiscal year 1978-1979 pursuant to Senate Bill No. 154. Those special districts which received the one-time bailout payments are required annually to contribute a portion of their property tax revenues to the SDAF. (Ops. Cal. Legis. Counsel, No. 18700 (Oct. 10, 1984) Special District Augmentation Fund, p. 46; 70 Ops.Cal.Atty.Gen., *op. cit. supra,* at pp. 90-91; *O'Brien, supra,* at pp. 2, 20.) Plaintiff district was not in existence

in fiscal year 1978-1979 and did not receive any bailout payments pursuant to Senate Bill No. 154. Section 98.6 does not literally apply to a district not in existence 1978-1979 nor require that a portion of its property revenues be allocated to SDAF.

Defendant urges that section 98.6 be interpreted to apply to a new district encompassing a "geographic area" formerly served by a dissolved district which received bailout payments. Otherwise, defendant contends, districts will be encouraged to consolidate for no purpose other than to form a new district exempt from contributions to the SDAF. For this reason, defendant argues, the Legislature must have intended that districts such as plaintiff succeed to the obligations imposed on predecessor districts by section 98.6.

■ "As was said long ago, and often repeated, ' "[i]t is elementary that there can be no intent in a statute not expressed in its words; that the intention of the legislature must be determined from the language of the statute. . . ." (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].)' " (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) "For constitutional reasons, the ascertainment of legislative meaning necessarily focuses on the enacted statute and not on an unenacted expression of legislative will, however reliable. An unenacted utterance has force, if at all, only as part of the proper context of the statute." (Dickerson, *The Interpretative and Application of Statutes,* Uses and Abuses of Legislative History (1975) p. 144.)

■ If the Legislature intended a "geographic area" analysis be applied to section 98.6, it omitted to say so and nothing in the statute suggests that a "geographic area" analysis was intended. The statute clearly spells out the circumstances under which a reduction of property tax allocations is required, i.e., where "the special district" (§ 98.6, subd. (a)(1)) received bailout payments for fiscal year 1978-1979. In the context of contributions to SDAF the statute makes no reference to reorganized or consolidated districts which have replaced districts which were required to contribute to the SDAF. The Legislature did provide, however, that when there is a change in organization, property tax *revenues* previously allocated to dissolved districts are required to be transferred to the newly formed district. (§ 99, subd. (a)(1)). Having in this way specifically addressed consolidation and reorganization in the context of revenue transfers, it is significant that the Legislature omitted to provide in equally clear terms, or at all, that newly formed districts succeed to their predecessors' obligation to contribute to

the SDAF. It is fair to assume the Legislature would have so provided if that were its intention. It did not.[4]

Defendant notes that in section 98.6, subdivision (a)(1) as originally enacted, a part of the formula for computing contributions to the SDAF was expressed as "equal to the amount of state assistance payment [bailout] *received by* such special district . . . ." (Italics added. Stats. 1979, ch. 282, § 59, p. 1029.) A 1979 amendment to section 98.6, subdivision (a)(1) replaced "received by" with the word "for." (Stats. 1979, ch. 1161, § 6.5, p. 4369.)[5] Defendant argues the 1979 amendment supports the trial court's ruling that the computation provided for in that section is based upon a geographic or service area basis, rather than an entity basis. We disagree. Whatever may be the significance of the statutory changes, it is too slender a reed to bear the significant burden which defendant would place upon it. If the Legislature had intended by such change to indicate section 98.6 is to be applied to a "geographic area" as distinct from a governmental entity, it would have done so in words more apparent than a simple change from "received by" to "for."[6]

Indeed, since its enactment in 1979, section 98.6 has been amended on six different occasions, most recently in 1987. (See Stats. 1979, ch. 1161, § 6.5; Stats. 1981, ch. 713, § 7, ch. 971, § 3; Stats. 1983, ch. 1305, § 4; Stats. 1984, ch. 448, § 5; Stats. 1985, ch. 1168, § 1; Stats. 1987, ch. 56, § 159, ch. 113,

---

[4] The County Counsel of Orange and San Diego Counties have similarly interpreted section 98.6, concluding reorganized or consolidated districts need not contribute to the SDAF.

The Attorney General has reached the opposite conclusion, i.e., that consolidated or reorganized districts succeed to the obligation of their predecessor districts to contribute to the SDAF. (70 Ops.Cal.Atty.Gen., *op. cit. supra,* at pp. 90-92.)

[5] The original version of subdivision (a)(1) of section 98.6: "A ratio shall be computed for each such special district equal to the amount of state assistance payment *received by* such special district for the 1978-79 fiscal year divided by the sum of such state assistance payment for the special district plus the amount of property tax revenue allocated to the special district for the 1978-1979 fiscal year pursuant to Section 26912 of the Government Code." (Stats. 1979, ch. 282, § 59, p. 1029, italics added.)

Subdivision (a)(1) of section 98.6 as amended in 1979: "A ratio shall be computed for each such special district equal to the amount of state assistance payment *for* such special district for the 1978-79 fiscal year divided by the sum of such state assistance payment for the special district plus the amount of property tax revenue allocated to the special district for the 1978-79 fiscal year pursuant to Section 26912 of the Government Code." (Stats. 1979, ch. 1161, § 6.5, p. 4369, italics added.)

[6] The present wording of subdivision (a)(1) of section 98.6 was adopted in 1983 (Stats. 1983, ch. 1305, § 4, p. 5254). All references to "special district" and "special districts" are now uniformly modified by the definite article "the" as follows: "A ratio shall be computed for each *of the* special districts equal to the amount of state assistance payment for *the* special district for the 1978-79 fiscal year divided by the sum of the state assistance payment for the special district plus the amount of property tax revenue allocated to the special district for the 1978-79 fiscal year pursuant to Section 26912 of the Government Code." (Italics added.)

§ 1, ch. 1184, § 12.5.) It is not from want of opportunity that the Legislature has failed to express the intention that newly formed districts succeeding districts which received bailout funds contribute to the SDAF.

The SDAF is in every sense a "zero-sum game." (*O'Brien, supra,* at p. 16.) Thus plaintiff's analysis of the statute has fiscal implications for contributing special districts just as defendant's analysis, if adopted, would have for plaintiff. For every dollar a district receives out of the fund, another district receives a dollar less. (*Ibid.*) Likewise, for every dollar that is not contributed into the fund, there is a dollar less to be distributed from the fund. (See *ibid.*) If plaintiff is not bound by the provisions of section 98.6, it will retain the revenues it would otherwise contribute to the SDAF. Those districts which depend on the SDAF for a portion of their funding stand to lose if districts such as plaintiff do not contribute to the SDAF.

Notwithstanding the fiscal implications, special districts are encouraged to reorganize. Since the enactment of Proposition 13 the Legislature has expressed a public policy favoring consolidation of special districts. (See, e.g., Gov. Code, §§ 56001, 56839.) In 1984, the Legislature enacted the California Special District Consolidation Assistance Act (Stats. 1984, ch. 1392d, § 1, pp. 4900-4901; Gov. Code, § 60350 et seq.). Government Code section 60351 states: "The Legislature finds and declares that it is in the best interests of the people of the state, and of primary importance to the safety of persons and property thoughout California, to establish a program to enable counties to assist special districts to develop and implement plans to consolidate their services." In turn, Government Code section 60353 permits the board of supervisors of a county to make loans to special districts in order to pay the costs of, inter alia, "[s]tudies to determine the feasibility of reducing the costs of districts through consolidation, merger, or reorganization." (Gov. Code, § 60353, subd. (a).)

It may be anomalous, as defendant points out, for "a special district . . . to determine or alter the scope or nature of its duty to participate in the SDAF solely by undergoing an organization change." However, were we to undertake to resolve the anomaly as defendant proposes, we " 'would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with a presumed legislative intent. That is a legislative and not a judicial function.' " (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], quoting from *Seaboard Acceptance Corp.* v. *Shay, supra,* 214 Cal. 361, 369; *In re King* (1970) 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983].)

The judgment is reversed, and the trial court is directed to issue a peremptory writ of mandate directing defendant to allocate property taxes due

plaintiff without deducting an amount for contribution to the SDAF and to enter judgment in favor of appellants Rio Linda/Elverta Fire Protection District and Citrus Heights Fire Protection District on defendant's cross-complaint.

Sims, J., and Marler, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 21, 1989. Mosk, J., and Broussard J., were of the opinion that the petition should have been granted.