[No. E013587. Fourth Dist., Div. Two. Dec. 27, 1994.]

EASTERN MUNICIPAL WATER DISTRICT, Plaintiff and Appellant, v. CITY OF MORENO VALLEY, Defendant and Respondent.

**COUNSEL**

Redwine & Sherrill, Gerald D. Shoaf and Steven B. Abbott for Plaintiff and Appellant.

Singer & Silvergleid, M. Neal Singer and Patrick J. Sampson for Defendant and Respondent.

**OPINION**

**RAMIREZ, P. J.**—Eastern Municipal Water District (District), plaintiff below, appeals from a trial court judgment entered after the court refused to enjoin enforcement of a local ordinance enacted by defendant City of Moreno Valley (City) which placed on the District the obligation to collect from its customers and remit to the City a 6 percent utility user's tax on the services provided by the District to City residents. We affirm.

### FACTS AND PROCEDURAL HISTORY

The essential facts of this case have been agreed to by stipulation of the parties and are not in dispute. Plaintiff District is a municipal water district organized under the Municipal Water District Law of 1911. (Wat. Code, § 71000 et seq.) The District provides domestic and other water and sewer services to residential, commercial and industrial customers located within the District boundaries. The District boundaries overlap the city limits of defendant City, and a certain number of the District's customers live within the city limits.

Defendant City is located in Riverside County and is a municipal corporation organized under the laws of the State of California. Thus, it is a general law city, and not a charter city operating under a home rule charter authorized in the state Constitution.

The parties have stipulated that the District is not engaged in a for-profit enterprise, and that the board of directors of the District "establishes water rates and sewer rates and levies taxes and assessments in the amounts required to generate the revenue necessary to defray the capital, operating, maintenance and administrative expenses" of the District.

In May and June of 1991 the City approved three ordinances, codified as chapter 3.26 of the City's municipal code, in which the City imposed a 6 percent tax on the use of specified utilities within the City, including the utilities provided by the District.[1] The City estimated that approximately $800,000 in taxes would be collected each year from the District's customers as a result of those enactments.᾿

---

[1]Sections 3.26.070 and 3.26.075 of the City's municipal code, those sections which affect the activities of the District, provide as follows:

"*3.26.070 Water Users Tax.* (a) There is hereby imposed a tax upon every person in the City using water which is delivered through mains or pipes. The tax imposed by this Section shall be at the rate of six percent (6%) of the charges made for such water and shall be paid by the person paying for such water.

"(b) There shall be excluded from the base on which the tax imposed in this Section is computed charges made for water which is to be resold and delivered through mains or pipes; and charges made by a municipal water department, public utility or a City or municipal water district for water used and consumed by such department, utility or district.

"(c) The tax imposed in this Section shall be collected from the service user by the person supplying the water. The amount collected in one (1) month shall be remitted to the Tax Administrator on or before the last day of the following month.

"*3.26.075 Sewer Users Tax.* (a) There is hereby imposed a tax upon every person in the City utilizing a sanitary sewer system. The tax imposed by this Section shall be at the rate of six percent (6%) of the charges made for such service and shall be paid by the person using such service.

Those sections of the chapter which imposed the tax on the services provided by the District contained provisions stating that "The tax imposed in this Section shall be collected from the service user" by the person furnishing or supplying the utility. The parties stipulated that the tax was levied upon the user of the service; that the ordinance required the service supplier to bill and collect the tax, and forward the tax revenues to the City; and that the City did not have a tax collection procedure in place which could be used to collect the tax.

The District's estimate of the cost to it of collecting the tax was approximately $22,360 in start-up costs and additional costs of approximately $4,938 per billing cycle. The parties stipulated that although the City was willing to reimburse the District for the cost of collecting the tax, the ordinance did not provide for such reimbursement.

The District refused to collect the utility user's tax because it believed there was no legal basis for the collection requirement, and it contended that if it was required to collect the tax on behalf of the City it was entitled to reimbursement of its costs. The City claimed that it was entitled to require the District to collect the tax and that the District was not entitled to reimbursement of its costs either under the ordinance or as a matter of law.

On October 18, 1991, the District filed a complaint for declaratory and injunctive relief seeking a judicial determination that the City's ordinances were invalid to the extent they required the District to collect the water and sewer utility user's tax. The complaint also sought a declaration that it was entitled to reimbursement from the City of all costs incurred by the District in the collection of the user's tax in the event the court upheld the validity of the ordinances and determined that the District was obligated to collect the tax.

In its complaint the District claimed that the City could have initiated its own collection system for the user's tax, but that the City was seeking to avoid the "taxpayer resentment" that would have been directed against the City if the City had collected the tax. The complaint went on to state that the District was not legally required to collect the tax on the City's behalf. The complaint listed the reasons the tax was invalid, including that it constituted an unlawful interference with the statutory duties of the District; that the collection duty was unconstitutional pursuant to article XVI, section 6 of the

---

"(b) The tax imposed in this Section shall be collected from the service user by the person furnishing the sanitary sewer service. The amount collected in one (1) month shall be remitted to the Tax Administrator on or before the last day of the following month."

California Constitution;[2] and that the City had no legal authority to require the District to collect the tax.

The City filed a demurrer to the complaint which was overruled by the court on December 2, 1991. At the same time the court issued a preliminary injunction sought by plaintiffs enjoining the City from enforcing the ordinances against the District. The City then filed its answer to the complaint and filed a cross-complaint against the District for declaratory and injunctive relief and damages.

At the time of trial on April 26, 1993, the parties stipulated to the facts outlined above and also stipulated to the dismissal of the City's cross-complaint. The parties requested permission to file posttrial briefing in lieu of argument and the court agreed to deem the case submitted following receipt of that briefing. The court subsequently issued a statement of decision in which it made the finding that "the City may validly require the District to collect the taxes from the utility users." Judgment for defendant City was entered September 20, 1993, and plaintiff District filed this appeal.

## DISCUSSION

On appeal, the District does not challenge the authority of the City to impose the utility user's tax; the District argues only that the City lacked the statutory authority to require the District to collect the tax from its customers and remit the tax to the City, and that in the absence of statutory authority the tax collection requirement was invalid.

It is undisputed that the City is a general law city, and not a charter city. "As such the city is limited in the exercise of its powers by the constitution and general laws. It has only the powers expressly conferred and such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the municipal corporation." (*Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 138 [277 P. 308], overruled on other grounds in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)

The authority to impose the tax itself was granted by the Legislature with the enactment of Government Code section 37100.5 in 1982. That section states, with one exception not relevant here, that "the legislative

---

[2]Article XVI, section 6, of the California Constitution states that the Legislature cannot give or lend the credit of the state or its subdivisions to, and cannot make a gift of public funds to, any person, association or corporation, whether municipal or otherwise.

body of any city may levy any tax which may be levied by any charter city, subject to the voters' approval pursuant to Article XIII A of the Constitution of California."

The authority of a charter city to require irrigation districts to collect a utility user's tax from their customers and remit it to the city was established in *City of Modesto* v. *Modesto Irrigation Dist.* (1973) 34 Cal.App.3d 504 [110 Cal.Rptr. 111]. In that case, as here, the city imposed a utility user's tax; the districts refused to collect the tax on behalf of the city and the city instituted litigation to compel them to do so. (*Id.*, at p. 506.) On appeal from judgment entered for the city the districts argued that the city ordinance requiring the districts to collect the tax for the city "impinges on the state's sovereignty over local entities." (*Ibid.*)

The appellate court rejected that contention. The court noted first that the California Supreme Court had held in *Yolo* v. *Modesto Irr. Dist.* (1932) 216 Cal. 274, 278 [13 P.2d 908], that irrigation districts such as appellants were engaged in proprietary activity. (*City of Modesto* v. *Modesto Irrigation Dist.*, *supra*, 34 Cal.App.3d at p. 506.) The court then stated that the Supreme Court in *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 139 [98 Cal.Rptr. 281, 490 P.2d 793], had held that an ordinance requiring a utility company to collect a utility user's tax "does not constitute forbidden or conflicting regulation of the utility." (*Ibid.*) The appellate court concluded that "If a city operating under a home rule charter can compel a public utility to collect the city's utility users' tax without engaging in impermissible regulation in a field of regulation preempted by the state under the Constitution, and if an irrigation district which sells electrical energy within city boundaries in competition with public utilities is involved in a proprietary activity, how can it be argued plausibly that the collection requirement of respondent's ordinance, if applied to that proprietary activity, is regulation which impinges on the state's sovereignty." (*City of Modesto* v. *Modesto Irrigation Dist.*, *supra*, 34 Cal.App.3d at pp. 506-507.)

As an alternate ground for upholding the city's power to require the districts to collect the utility user's tax, the court in *City of Modesto* v. *Modesto Irrigation Dist.*, *supra*, also stated that "it is obvious that such city has no practical nor economical means of collecting such a tax without the cooperation of the supplier of the utility service." The court noted that in order to collect a tax which was based on use of the utility the city first would have to audit the books and records of the districts on a regular basis in order to assess the charges, and then would have to separately bill each of the utility users. (34 Cal.App.3d at p. 508.)

Having reviewed the difficulties involved for the city in collecting the tax the court stated, "It is basic that the power to tax carries with it the corollary power to use reasonable means to effect its collection; otherwise, the power to impose a tax is meaningless. (*Ainsworth* v. *Bryant* [(1949)] 34 Cal.2d 465, 476. . . .)" (*City of Modesto* v. *Modesto Irrigation Dist., supra,* 34 Cal.App.3d at p. 508.)

We have concluded that the resolution of the issue before us can be found in the second ground given for the decision in *City of Modesto* v. *Modesto Irrigation Dist., supra.* Appellant here does not claim that the ordinance impinges on the state's sovereignty; the District contends only that there was no statute which authorized the City to impose the collection requirements upon the District. In our view, Government Code section 37100.5, which authorized imposition of the tax, carried with it the authorization to the City to use reasonable means to collect the tax; in this case, such reasonable means could include requiring the District to collect the tax and remit it to the City.

Appellants have not cited any specific authority to support their contention that the legislation authorizing imposition of the tax did not include the authority to compel collection of the tax as well. They cite other legislation which makes specific provision for collection of particular taxes and they argue that the silence of Government Code section 37100.5 on that issue indicates an intent that the power to compel collection of the tax was not to be conferred by that section.

Logic and legal authority, however, do not support the District's position. As we have discussed above, it has been held that a charter city has the implied authority to require collection of a utility user's tax by the provider of the service. (See *City of Modesto* v. *Modesto Irrigation Dist., supra,* 34 Cal.App.3d 504.) As we have quoted above, Government Code section 37100.5 provides that any tax which may be levied by a charter city may be levied by the legislative body of a general law city. The authorities are uniform in concluding that "the city's power to levy such tax would include the power to use reasonable means to effect its collection [citations]." (*Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 476 [211 P.2d 564].) The City has "the powers expressly conferred and such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the municipal corporation." (*Hurst* v. *City of Burlingame, supra,* 207 Cal. at p. 138.)

Authority from other states, although not directly applicable to interpretation of a specific delegation of authority by the California Legislature, leads

us to the same result. Thus, for example, one federal district court has stated that "When the state reserved the right to tax, it also reserved the right to collect or enforce the tax. The former without the latter would be an empty gesture . . . ." (*Ranier Nat. Park Co.* v. *Martin* (W.D.Wn. 1937) 18 F.Supp. 481, 488, affd. 302 U.S. 661 [82 L.Ed. 511, 58 S.Ct. 478].) The Supreme Court of Florida, in upholding the authority of a municipality in that state to sell and assign tax certificates, stated that "Powers legally conferred by express provisions of law, and such as are fair implication and intendment properly incident to or included in the powers expressly conferred, may be exercised for the purpose of carrying out and accomplishing the object of any municipality in this state. [Citation.]" (*Ranger Realty Co.* v. *Miller* (1931) 102 Fla. 378 [136 So. 546, 550].)

We find no principled basis for holding that, in enacting Government Code section 37100.5, the Legislature intended to authorize general law cities to impose a tax but did not intend to allow them to use reasonable means to collect those taxes. We therefore affirm the holding of the trial court.

## DISPOSITION

The judgment is affirmed. Costs on appeal to be borne by appellant.

Dabney J., and McDaniel J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 1995.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.