[No. E013628. Fourth Dist., Div. Two. July 18, 1995.]

EDGEMONT COMMUNITY SERVICES DISTRICT, Plaintiff and Appellant, v.
CITY OF MORENO VALLEY, Defendant and Appellant.

**COUNSEL**

Swarner & Fitzgerald and Lewis F. Jacobsen for Plaintiff and Appellant.

Singer & Silvergleid, M. Neal Singer and Patrick J. Sampson for Defendant and Appellant.

**OPINION**

**RAMIREZ, P. J.**—Plaintiff Edgemont Community Services District (District) appeals from judgment entered in an action filed against defendant City of Moreno Valley (City) for declaratory relief and an injunction. Under the judgment the District is required to collect from its customers and remit to the City a utility user's tax imposed by the City on the sewer services rendered by the District to its customers, and the District is required to remit those taxes to the City without reimbursement for costs of collection.

The City also has appealed, challenging that portion of the judgment which provides that the City may not require the District to collect the utility

user's tax from the District's customers for street lighting services rendered by the District, and that the City may not collect the utility user's tax from the District for its use of electrical energy. In that judgment the court also directed that the District was to recover from the City the sum of $161.86 previously paid by the District as tax on electrical energy used by the District.

*Facts*

The facts of this case are not in dispute. The District is a community services district organized in 1957 under the Community Services District Law (Gov. Code, § 61000 et seq.) and as such is a political subdivision and public agency of the State of California. The District is located in the County of Riverside; a portion of the District lies within the boundaries of the City and a portion within the City of Riverside.

The City is a general law city, incorporated in 1984, which is located in the County of Riverside. A portion, but not all, of the City is located within the boundaries of the District.

The District was formed for the purposes of "1. The collection, treatment or disposal of sewage, waste and storm water of the district and its inhabitants; [¶] 2. Public recreation by means of parks, playgrounds, swimming pools or recreation buildings; [¶] 3. Street lighting." Since its formation the District has operated a sanitary sewer system for the collection and disposal of sewage and waste water and has provided street lighting to areas within the District. The District uses electrical energy purchased from Southern California Edison Company to provide the street lighting.

The District annually determines the cost of operating and maintaining its sewer system and the cost of furnishing street lighting within the District and, after a public hearing, establishes rates to cover those costs which are to be charged to the properties receiving the services. The rates, charges and taxes which are imposed by the District for its services are submitted annually to the Riverside County assessor and are then collected on the Riverside County tax roll. The District is required to reimburse the County of Riverside for expenses incurred by the county in collecting those rates, charges and taxes.

In May and June of 1991 the City adopted a series of ordinances which were codified as chapter 3.26 of the City's municipal code. The ordinances imposed a 6 percent utility user's tax on, among others, every person in the City using a sanitary sewer system and every person, other than an electric or gas corporation, using electrical energy in the City.

The ordinance provides that the tax is to be collected from the service user by the person furnishing the service, and that the tax, or an estimated amount of tax based on previous months' billings, is to be remitted to the tax administrator before the last day of each month. As finally amended, the ordinance also provides that "As used in this Section, the term 'using electrical energy' shall not be construed to . . . include the use and consumption of such energy by a public utility or governmental agency in the conduct of its business."

On February 10, 1992, the District filed a complaint for declaratory and injunctive relief against the City. The District first contended that it was not a "person" as defined in the ordinances, and that the District was therefore not included within the obligation to pay tax on electricity furnished to it or the obligation to collect tax from other users of utilities. The complaint also sought a declaration by the court that the ordinances enacted by the City were invalid and unenforceable against the District "with respect to any tax on use of electrical energy by the District in street lighting . . . and with respect to any provision or requirement that the District collect the city utility user's tax from persons using the District's sanitary sewer system." The District also sought a temporary restraining order, a preliminary injunction and a permanent injunction restraining the City and its agents from enforcing the ordinances against the District.

The complaint went on to ask, in the event the court found that the District was required to collect the utility user's tax on behalf of the City, that the court would order the City to pay all costs incurred by the District in collecting the tax.

The City demurred to the complaint, contending first that there was clear legal authority under which the District could be required to collect the tax on behalf of the City, and rejecting the District's narrow interpretation of the word "person." The City next conceded that the District's obligation to collect the tax was without compensation or reimbursement from the City for the costs of collection, but argued that the same authority which obligated the District to collect the tax should be construed to require the District to pay for that collection. The City then argued that the District had failed to exhaust its administrative remedies.

The District opposed the demurrer stating that at the very least the complaint alleged an actual controversy over whether the ordinance even applied to the District, and that there were no administrative remedies which were a prerequisite to the filing of an action. The court overruled the demurrer and ordered the City to file an answer to the complaint.

The City filed a motion for reconsideration of the order overruling the demurrer noting, among other contentions, that following the hearing on the demurrer the City had amended the definition of "person" in the ordinance to include a "district of any kind." Thus, to the extent the demurrer had been overruled on the ground that the District was not a "person" under the ordinance, that ground had been removed.

In August 1992, the court granted the motion for reconsideration and upon reconsideration again overruled the City's demurrer. In ruling on the motion the court noted that "Defendant [City] has failed to demonstrate that it can tax Plaintiff [District] as a user or consumer of electricity."

The City filed its answer to the complaint and trial was held in April 1993. At the close of the trial the parties were permitted to file additional posttrial briefs, which they did. The court issued a written statement of decision, and judgment was entered on October 22, 1993.

In its judgment the court held that the City could require the District to collect the City's utility user's tax from the District's customers for sewer services provided by the District and remit those taxes to the City without reimbursement for costs of collection. Accordingly, the court directed that the District was to abide by the ordinance imposing the tax as of the date on which the ordinance had been amended to include a community service district as a person to whom the ordinance applied.

The court concluded, however, that the City could not require the District to collect the tax for street lighting services rendered by the District. The court went on to hold that the City could not collect the utility user's tax from the District for the District's use of electrical energy, and directed that the District was to recover from the City the sum of $161.86 which had previously been collected on the District's use of electrical energy.

The District filed an appeal from that portion of the judgment holding that the District could be required to collect the tax on sewer services it provided, without reimbursement for the costs of collecting that tax; and the City filed an appeal from those provisions holding that the District was not required to collect the tax on street lighting services provided by the District, and that the City could not collect the tax from the District itself for its use of electrical energy.

*Discussion*

## I. *The District's Appeal*

### A. *Collection of Tax on Sewer Services Provided by the District*

█ On appeal the District first argues that the City, as a general law city, does not have the power to require the District to collect and remit to the City the utility user's tax on the sewer services provided by the District to its customers. We have recently addressed this issue in a decision involving the same ordinance in a challenge brought by a municipal water district which provides water and sewer services to customers who live within the City. (*Eastern Mun. Water Dist.* v. *City of Moreno Valley* (1994) 31 Cal.App.4th 24 [36 Cal.Rptr.2d 823], review den.) In that case we upheld the trial court's decision to enforce the ordinance against the water district, and we have not been presented here with arguments which persuade us that there is reason for us to reconsider that decision. We therefore affirm that portion of the trial court judgment which holds that the District is required to collect from its customers and remit to the City the utility user's tax imposed by the City on sewer services provided by the District.

### B. *Reimbursement for Costs of Collecting the Taxes*

█ Raising an issue not argued by the appellant in *Eastern Mun. Water Dist.* v. *City of Moreno Valley*, *supra*, the District here contends that the trial court erred by failing to order the City to reimburse the District for the cost of collecting the utility user's tax. In support of this contention the District argues that under its authorizing legislation its board of directors is authorized only to charge for services and facilities furnished by the District; the board is not given the power to charge the residents of the District the cost of collecting the City's utility user's tax. Thus, unable to pass the cost along, the District itself must bear the cost of collection.

The District further argues that the judgment requiring the District to pay the expenses of collecting the utility user's tax for the City amounts to a diversion of funds from the District to the City and is a violation of article XVI, section 6 of the California Constitution which prohibits the state Legislature from making or authorizing a gift of public money to, among others, a municipal corporation. That provision states, in relevant part: ". . . nor shall [the Legislature] have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ." (Cal. Const., art. XVI, § 6.)

That constitutional prohibition was interpreted in *Golden Gate Bridge etc. Dist.* v. *Luehring* (1970) 4 Cal.App.3d 204 [84 Cal.Rptr. 291].[1] In that case, as here, the party bringing suit was a district—the Golden Gate Bridge and Highway District—created under authority of state legislation. (*Id.*, at p. 206.) Between the years of 1929 and 1931 the district levied taxes on the property owners of the various counties within the district to meet expenses until bonds could be sold.

Over the years following the opening of the bridge, revenues from bridge tolls "increased spectacularly." (*Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* 4 Cal.App.3d at p. 207.) In 1968, with the prospect of the bonded indebtedness of the district being paid off by 1971, the Legislature authorized the district to make payments reimbursing the counties within the district for taxes which had been collected from taxpayers of those counties. (*Ibid.*) When those payments were not made, the district and its directors petitioned for a writ of mandate to compel payments to the county governments pursuant to the 1968 statute. (*Id.*, at p. 206.) Respondents, who were the general manager and auditor of the district, resisted the district directors' order to pay, on the theory that the statute proposed an unauthorized gift of public funds. (*Id.*, at p. 207.)

The appellate court agreed with respondents and refused to order payment to the counties. The court reviewed previous decisions and distilled from them the rule that if the proposed transfer is by a limited purpose agency, then the expenditures by the recipient entity must further the purpose of the donor agency in order to pass constitutional muster. (*Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* 4 Cal.App.3d at p. 209.) "In the present case, a showing is needed that the counties would use the funds for purposes for which the district itself could have used them." (*Id.*, at p. 208.) The court went on to identify the purpose for which the district had been organized— " ' "the bridging of the Golden Gate . . ." ' " (*id.*, at p. 209)—and noted that the petitioners did not even contend that the funds would be used for projects related to that purpose. (*Id.*, at p. 210.) The court then rejected the various arguments of the petitioners in support of an order of reimbursement to the counties, and denied the district's petition. (*Id.*, at p. 215.)

We find the reasoning of *Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* instructive in the present case. In *Eastern Mun. Water Dist.* v. *City of Moreno Valley, supra,* 31 Cal.App.4th 24, we concluded that "Government Code

---

[1]At the time of the decision in *Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* the prohibition at issue was set forth in article XIII, section 25 of the California Constitution. It is now contained in article XVI, section 6 of the California Constitution.

section 37100.5, which authorized imposition of the tax, carried with it the authorization to the City to use reasonable means to collect the tax," and that "such reasonable means could include requiring the District to collect the tax and remit it to the City." (31 Cal.App.4th at p. 30.) The questions presented by the case now before us are, first, whether Government Code section 37100.5 should be construed as authorizing the City to require that the District pay the cost of collecting the tax; and, if so, whether that authorization violated article XVI, section 6, of the California Constitution which prohibits gifts of public funds.

Considering the second question first, we conclude that under article XVI, section 6, of the California Constitution, as explained by the court in *Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* 4 Cal.App.3d 204, the Legislature lacked the power to authorize the City to require that the District pay the cost of collecting the tax.

Ordinarily, the cost of collecting a tax would be borne by the entity which would benefit from imposition of the tax. (See, e.g., Gov. Code, § 51513 [city taxes collected by county to be paid to city after deduction of county's compensation for its services in collecting the tax]; Gov. Code, § 61761 [cost to county of collecting taxes for community services district to be deducted from tax money, in amount determined by agreement, and transferred to county salary fund].) A decision to shift that cost to the entity which is charged with collecting the tax could constitute a transfer of funds within the meaning of article XVI, section 6, of the California Constitution.

In order to comply with that constitutional provision, the transfer of funds by a limited purpose agency, such as the District, to a municipal corporation, such as the City, must have as its purpose the promotion of the interests of the donor agency, i.e., the District. Furthermore, as was stated by the court in *Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* "as a limited purpose agency, the district can have no interest other than furtherance in some way of the purpose for which it was created." (4 Cal.App.3d at p. 210.)

We have discussed above the purposes for which the District was created: "1. The collection, treatment or disposal of sewage, waste and storm water of the district and its inhabitants; [¶] 2. Public recreation by means of parks, playgrounds, swimming pools or recreation buildings; [¶] 3. Street lighting." It is apparent that none of those purposes would be served by requiring the District to pay the cost of collecting the tax imposed by the City on users of certain utilities within the District. The entity which would benefit from collection of the tax is the City; there is no indication in the record that all or

even any portion of the tax would be used for the exclusive benefit of the District's residents or for the purposes specified in the resolution by which the District was organized. Thus, under the reasoning of *Golden Gate Bridge etc. Dist.* v. *Luehring, supra,* we are compelled to reverse the trial court's holding that the District was not entitled to reimbursement for the cost to it of collecting the utility user's tax.[2]

Nor are we persuaded by the City's other arguments offered in support of the trial court's ruling. The City has offered no authority to support its assertion that the cost of collection of the tax could properly be collected by the District from the ratepayers because the tax was incident to the services and facilities furnished by the District. In fact, counsel for the City made the statement at trial that "As far as the gift of public funds argument is concerned, the City has all along indicated a willingness to help out and to pay its fair share of the cost of collection." Thus, apparently the City itself did not initially intend to require the District to pay the cost of collection.

■■■■ As the parties here have acknowledged, where the facts are not in dispute and a pure question of law is before the court on appeal, the standard of review is independent or de novo review of the legal issues. " 'Questions of law are reviewed under the non-deferential, de novo standard. [Citations.]' " (*People* v. *Louis* (1986) 42 Cal.3d 969, 985 [232 Cal.Rptr. 110, 728 P.2d 180].) Having conducted such a review of a purely legal issue we have now concluded that the trial court erred when it held that the District could not recover from the City the costs incurred by the District in collecting the utility user's tax from its customers. We therefore reverse the judgment as to this issue and we direct the trial court to enter a judgment requiring the City to compensate the District for the cost of collecting the tax on sewer services provided to District customers who live within the City.

## II. *The City's Appeal*

■ The City has filed an appeal from that portion of the judgment stating that the City may not require the District to collect the utility user's tax on street lighting services rendered by the District, and that the City may not collect the tax from the District itself for the District's use of electrical energy.

---

[2]We reject the City's claim that the District cannot prevail because it has failed to establish that any funds would be expended to pay for the cost of collection of the tax. The District points out that if the District elects to have the county collect its rates or charges on the county tax roll, the District is required to reimburse the county for the county's expense in collecting those charges. (See Gov. Code, § 61621.4.) At trial the court asked a witness, a district engineer for the District: "Does the county charge [the District] for the cost of collection of these fees that are placed on the tax bill?" The witness replied: "Yes, sir."

A basic question presented by the City's appeal is whether the District was providing street lighting services to its customers; or whether it was providing electrical energy to its customers which was then used to light the streets, and whether that constituted use of electrical energy, by either the District or its customers, which was subject to the utility user's tax.

Section 3.26.040, paragraph (a), of chapter 3.26 of the City's municipal code, entitled "Electricity Users Tax," provides, in part, that "There is hereby imposed a tax upon every person other than an electric or gas corporation using electrical energy in the City. The tax . . . shall be billed to and paid by the person using the energy." The section goes on, in paragraph (c), to state that "The tax imposed in this Section shall be collected from the service user by the service supplier or non-utility supplier."

In paragraph (b) of section 3.25.040, the municipal code states what is meant by the term "using electrical energy." Describing what is excluded from the term, the section provides, in part, "nor shall the term [using electrical energy] include the mere receiving of such energy by an electric corporation or governmental agency at a point within the City of Moreno Valley for resale; nor shall the term include the *use and consumption of such energy by a public utility or governmental agency in the conduct of its business.*" (Italics added.)

In this appeal the District first argues that street lighting is not one of the services on which the ordinance imposes a tax, and that collection of the tax on those services is therefore unauthorized.[3] The District goes on to argue that the District provides street lights as part of the exercise of the functions delegated to it by the state, and that the use of electrical energy in providing the street lighting is therefore the "use and consumption of such energy by a . . . governmental agency in the conduct of its business." We are compelled to agree.

It is undisputed that the ordinance imposing the utility user's tax did not provide for a tax on those receiving street lighting services. The City argues, however, that under the ordinance the District is taxable like any other service user for its use of electrical energy to operate its street lights.

As a preliminary matter we have concluded that by offering street lighting the District was providing a service to its customers and was not merely

---

[3]Chapter 3.26 of the City's municipal code imposes a telephone user's tax, an electricity user's tax, a gas user's tax, a water user's tax, a sewer user's tax, and a cable television user's tax. There is no mention of a tax on street lighting.

supplying them with electrical energy. "Special districts are authorized by a variety of statutes to provide services such as police and fire protection, water, sewage disposal, road maintenance and street lighting. (See, e.g., Gov. Code, §§ 16271, subd. (d), 56036, 61600; Health & Saf. Code, § 4113; *Requirement of Special Districts to Contribute to Special District Augmentation Fund,* 70 Ops.Cal.Atty.Gen. 87 (1987).)" (*American River Fire Protection Dist.* v. *Board of Supervisors* (1989) 211 Cal.App.3d 1076, 1079 [259 Cal.Rptr. 858].) In a slightly different context, a district would be treated as a provider of water or sewage service rather than as the supplier of the electricity required to run pumps which are used for distributing water or collecting sewage. Here it is the street lighting, not the electricity, which is being provided by the District. Since that service was not taxed under the ordinance we conclude that the street lighting service was not subject to the 6 percent utility user's tax.

Notwithstanding the definition in the ordinance of "using electrical energy," which excludes from the reach of the utility user's tax the use and consumption of electrical energy by a governmental agency in the conduct of its business, the City argues that the District's use of electrical energy is not excluded when the District is acting in a proprietary capacity, such as when it provides street lighting. The City argues, in effect, that what the District does with the energy in the course of providing street lighting does not constitute "use and consumption of [electrical] energy" by the District "in the conduct of its business." We are not persuaded by the City's argument. The business of the District is, in part, to provide street lighting. The City has chosen not to tax that particular service and it cannot now avoid that decision by artful construction of language of the ordinance.

We conclude that the trial court correctly held that the City may not require the District to collect the utility user's tax from the District's customers for street lighting services rendered by the District, and that the City may not collect the utility user's tax from the District for the District's use of electrical energy. Accordingly, the trial court was also correct in ordering the District to recover from the City the sum of $161.86 for taxes previously collected on electrical energy used by the District.

### Disposition

We reverse that portion of the judgment which held that the District could not recover from the City the costs incurred by the District in collecting the utility user's tax from its customers for sewer services provided by the District, and we direct the trial court to enter judgment requiring the City to

reimburse the District for the cost of collecting that tax. In all other respects the judgment is affirmed. Each party to bear its own costs on appeal.

Richli, J., and McKinster J., concurred.

A petition for a rehearing was denied August 7, 1995, and the petitions of all appellants for review by the Supreme Court were denied November 2, 1995.